## THE CITY OF ALBANY, PLAINTIFF, *v.* THE WATERVLIET TURNPIKE AND RAILROAD COMPANY, DEFENDANT.

*Annexation of territory to a city — right of the city to extend its street over, and acquire rights to a turnpike — rights conferred by the charter of a turnpike and horse railroad company as to the place and manner of laying tracks are subordinate to the rights of the public.*

The defendant was incorporated under the name of the Watervliet Turnpike Company, by chapter 141 of 1828, to make a good and permanent turnpike road from the north boundary line of the city of Albany to the upper ferry opposite Troy. By chapter 233 of 1862 its name was changed and the company was authorized, in addition to their present rights, powers, franchises and privileges, " to construct and maintain one or more railroad tracks and ways, with all the necessary turnouts, branches and switches, *upon the bed or one or both sides of their turnpike road.*" The act further provided that " that portion thereof which shall be constructed in, through or upon any of the public and paved street or streets of the city of Albany * * * shall be constructed and maintained flush with the surface of said street or streets as they now are or may be from time to time established or altered; * * * and said railroad tracks and ways shall be so constructed and used as to leave on each side thereof a portion of the carriage-way sufficient for the safe and convenient passage of carriages going in one direction, and so as not to occupy more than one-half of the width of the present turnpike road or of the carriage-way of any of the streets of the city of Albany." After the passage of this act the company constructed its railroad tracks upon the east side of the turnpike road for the whole length thereof, and also pursuant to permission granted by the city, laid its tracks in the city of Albany. and has ever since maintained and used the tracks so laid on the east side of the road. A portion of the town of Watervliet, adjoining the city on the north, having been annexed to the city by chapter 139 of 1870, so as to include therein a mile and a quarter of the turnpike and railroad of the defendant, proceedings were instituted by the city, under the provisions of its charter, by which Broadway was extended over the said portion of the turnpike; and proceedings were taken in due form by which the title to the aforesaid portion of the turnpike which was taken into the city was vested in the city, and the damages occasioned to the defendant were ascertained and paid to and received by it. Thereafter an ordinance was passed by the city requiring the company to change the location of its tracks from the east side of the road to the center of Broadway, and another ordinance directing the corporation counsel to institute proceedings to compel the defendant to comply therewith.

*Held,* that the city had power to so extend Broadway and acquire the title of the portion of the turnpike included within its limits, and as the defendant had notice of the proceedings, appeared by counsel and accepted the award, the

question as to its adequacy or inadequacy could not now be raised, and that so long as it remained undisturbed the parties were concluded by it, certainly as to mere errors not effecting jurisdiction, such as errors in admitting or excluding evidence on the hearing before the officers appointed to inquire and certify as to the damages.

The company claimed that the proceedings taken by the city to extend Broadway, and provide for the assessment and payment of the damages occasioned thereby, were ineffectual to take away or impair the vested rights of the company, or such rights as were especially and expressly granted to it by chapter 233 of 1862, one of which was the right "to construct and maintain one or more railroad tracks and ways with all necessary turnouts, branches and switches upon the bed or one or both sides of their present turnpike road."

*Held*, that the claim could not be sustained.

That the rights of the company were subordinate to such as were necessary and appropriate to the public use of the land for general public travel, and compensation was provided for to answer all damages necessarily resulting to those interested in such land who were injured by its appropriation to public use.

That this was not the taking away, absolutely, of land already appropriated to public use.

SUBMISSION of a controversy upon an agreed statement of facts under section 1279 of the Code of Civil Procedure.

The defendant was incorporated under the name of The Watervliet Turnpike Company, by chapter 141 of the Laws of 1828, for "the purpose of making a good and permanent turnpike road on the most direct and convenient route from the north boundary line of the city of Albany to the upper ferry opposite the city of Troy." (Sec. 1.) It is admitted that the company acquired the right to the real estate necessary for the turnpike road mentioned in said act, and entered into the use and occupation thereof soon after the passage of said act, and continued to use the same as a turnpike road until the year 1862. By chapter 233 of the Laws of 1862, the name of the company was changed to "The Watervliet Turnpike and Railroad Company," and the company was authorized "in addition to their present rights, powers, franchises and privileges," "to construct and maintain one or more railroad tracks and ways with all the necessary turnouts, branches and switches upon the bed or one or both sides of their turnpike road." The company was also authorized by the same act, with the consent and such restrictions as might be deemed proper by the common council of the city of Albany, to extend and maintain its railroad track or tracks and ways from the southerly termination of said turnpike road, in and through Broadway in said

city to South Ferry street under certain restrictions and obligations stated in said act.

Section 2 of said act provides as follows : " The track or tracks of said railroad or way and all the branches, turnouts and switches thereof, shall be constructed with the most approved rail, and that part thereof which shall be constructed in, through or upon any of the public and paved street or streets in the city of Albany or the village of West Troy or the village of Cohoes, shall be constructed and maintained flush with the surface of said street or streets as they now are or may be from time to time established or altered, and the said company shall keep the surface of every such street, inside the rail and for two feet outside thereof, at all times in good and proper condition and repair; and said railroad tracks and ways shall be so constructed and used as to leave on each side thereof a portion of the carriage-way sufficient for the safe and convenient passage of carriages going in one direction, and so as not to occupy more than one-half of the width of the present turnpike road or of the carriage-way of any of the streets of the city of Albany or the village of West Troy or Cohoes, through which the same may be constructed."

The common council afterwards granted permission to defendant to lay its tracks in the city of Albany, under certain restrictions. After the passage of the last mentioned act, and the said ordinances, defendant proceeded to construct railroad tracks upon the east side of its turnpike road for the whole length thereof, and also to lay its tracks in the city of Albany, as authorized by said ordinances, and constructed and put in operation at least six continuous miles of said tracks with the necessary turnouts, branches and switches within three years after the passage of the act. Ever since the construction of said railroad tracks, the defendant has maintained its said tracks with all the necessary turnouts, etc., upon the east side of the said turnpike road, extending from the then north boundary of the city of Albany to the village of West Troy, and has occupied the said turnpike so that no vehicles can pass to the east of said tracks.

By chapter 139 of the Laws of 1870, a certain portion of the town of Watervliet was annexed to the city of Albany, and the north boundary of the said city was changed so as to include a mile and a

quarter in length of the turnpike and railroad of defendant, which portion of said turnpike and railroad has ever since been and is now included in the limits of the city of Albany.

Proceedings were commenced under the provisions of the charter by the city of Albany, on the 8th day of September, 1884, to acquire title to that portion of the turnpike which was included in the limits of the city, and to extend Broadway over the same to the new northern boundary of the city. The counsel for the company appeared before the court to appraise damages and certain evidence offered by him was rejected. An award was made by the commissioners to the company of five dollars, which was confirmed by order of the court, and was received by the defendant.

On the 20th day of July, 1885, the common council passed an ordinance requiring the company to change the location of its tracks from the east side of the road to the center of the roadway. Since the adoption of this ordinance, the common council has also passed a resolution directing the corporation counsel of the city to institute proceedings to compel the compliance of the defendant with such ordinance. A contract has since been made by the city for the paving of Broadway between the north line of DeWitt street and the present north line of the city with granite blocks, and the contractor, under the direction of the street commissioner, is now about to perform and execute said contract by paving the said street with granite blocks. The street thus contracted to be paved includes that portion of the turnpike road of the defendant, between the former and the present north bounds of the city, being about a mile and a quarter in length.

The plaintiff, the City of Albany, claims that it had authority to pass the ordinance above referred to, and that the defendant is legally bound and should be compelled to change its tracks from the side of the street or turnpike to the center thereof, so that vehicles can pass on each side of the tracks, and to construct its tracks in the center of the street of rails that shall be flush with the pavement that shall be laid ; and claims that it is entitled to a judgment compelling the defendant specifically to perform the duty imposed upon it by said ordinance.

The defendant claims that the rights of the city are subordinate and subject to the franchises and rights conferred upon the company

by the legislature, and that the city has no right to interfere with its chartered rights and privileges, and that defendant, under and by virtue of said act, chapter 233 of the Laws of 1862, was vested with the right to construct and maintain its railroad tracks upon the side of the said turnpike road, and that such rights and privileges have not been taken away or impaired by any subsequent act of the legislature, or by any act or proceedings instituted by the common council. The defendant also claims that it is entitled to a judgment in its favor restraining the plaintiff or any of its officers or contractors from interfering with its tracks without the consent of the defendant.

*D. Cady Herrick*, for the plaintiff.

*Hale, Cowen & Bulkley*, for the defendant.

Bockes, J. ·

That the defendant's company had rights, absolute or qualified, in the strip of land taken for the extension of Broadway, which strip came within the territorial limits of the city by the annexation of territory to the city, is undeniable. The first question, then, is whether the taking of the strip in which the company had rights, for the purpose of a public street was in accordance with legal authority This question seems well answered in the affirmative by the facts stated in the submission laid before the court as the basis for its decision. The act of 1870, chapter 139, authorized the annexation, and thereafter the annexed territory with its freeholders and inhabitants was, for all purposes provided for by the city charter, subject to the control and government of the city, with some few exceptions, here unnecessary to be noticed. (Sec 5) Its charter conferred authority upon the common council "to take within the city any ground or real estate, with the appurtenances * * * for the purpose of laying out, opening, extending, etc., * * * any street, road or avenue (1883, chap. 298, tit 17, § 1), and to meet the constitutional requirement as to compensation, provision was made for an assessment and payment of damages occasioned thereby (See subsequent sections.) The extension of Broadway was duly made and proceedings were had in due form for ascertaining the damages caused by it to the parties interested, of which pro-

ceedings the company had notice, and in point of fact participated therein. Its damages were assessed in accordance with all legal requirements, and the sum awarded to the company for its damages was paid over to and was accepted by it. It matters not here that it was small in amount, inasmuch as it was ascertained and entered of record in all respects according to law. The subject of its adequacy or inadequacy was foreclosed in that proceeding. So long as the award, whatever was its amount, remained undisturbed by reversal or otherwise, the parties were concluded by it; certainly so as to mere errors not affecting jurisdiction, such as errors in admitting or excluding evidence on the hearing before the officer appointed to inquire into and certify the damages or in the sum or sums awarded by them. But it is insisted on the part of the company that the proceedings to extend Broadway and to provide for the assessment and payment to the parties interested in the land taken for that purpose, of damages occasioned thereby, were ineffectual to take away or impair the vested rights of the company, or such rights as were especially and expressly granted to it by the act of 1862, chapter 233, one of which was the right to construct and maintain one or more railroad tracks and ways, with all necessary turnouts, branches and switches upon the bed or one or both sides of their present turnpike road. (Sec. 1.) We conclude otherwise. Authority was conferred upon the common council to take the ground for the purpose of a public street, that is, to make it useful as such to the public, to answer the necessities and conveniences of public travel with vehicles, etc

So it was provided that " upon payment or deposit of the sum to be paid as compensation, the city of Albany shall be entitled to enter upon and be seized of the fee of the real estate so taken as afore_ said, for public use." (Tit. 17, § 8, chap 298 of 1883 ) Thus other rights were subordinated to such as were necessary and appropriate to the public use of the land for general public travel, and compensation was provided for to answer all damages necessarily resulting to those interested in such land, injured by its appropriation to public use as a street. This was not the taking away, absolutely, of land already appropriated to public use.

As regards the rights of the company, it but regulated, or gave to the city the power to regulate its use as between the company and

the city and provision was made for compensation for the injury growing out of the interference with the company's rights authorized by the act The land was appropriated to use as a public street with all the necessary incidents to secure such convenient use, and it must follow that the ordinary powers of government brought into exercise to secure that end will attach; those powers are such as pertain to the city officer or branch of the city government having the public streets of the city in charge; and so it is declared in the city charter that the common council shall be commissioners of highways in and for the city, with power to regulate the use of the streets, highways, roads and public places by foot passengers, vehicles, railways and locomotives. (Tit. 3, § 14.) The extension of Broadway having become a public street of the city, its use became a matter of regulation by the common council, hence that body might control the position of the defendant's tracks along its surface. If the above suggestions and conclusion be sound, the ordinance here brought in question is well supported by ample authority.

Judgment must go for the city on the case submitted, with costs. If counsel shall be unable to agree upon the judgment to be entered, it will be settled on notice by one of the justices of the court.

Present — LEARNED, P. J.; LANDON and BOCKES, JJ.

Judgment ordered for city, decree to be settled by BOCKES, J.